IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JUSTIN GENE OWEN

VS.                                          CIVIL ACTION NO. 2:10cv311-KS-MTP

MICHAEL J. ASTRUE,
Commissioner of Social Security

## ORDER ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATION AND DISMISSING CASE WITH PREJUDICE, ETC.

This cause is before the Court pursuant to action filed by Plaintiff Justin G. Owen, pursuant to 42 U.S.C. § 405(g) seeking a judicial review of a final decision of the Commissioner denying his claim for a period of disability and disability insurance benefits and supplemental security income. A Report and Recommendation [27] has been filed by the Magistrate Judge and currently pending is Defendant's Motion to Affirm the Decision of the Commissioner [23] and Plaintiff's Motion for Judgment on the Pleadings [21]. The Court has considered the pleadings, the transcript, the applicable law, and being fully advised in the premises, finds that the Commissioner's decision should be and is, hereby, affirmed.

## PROCEDURAL HISTORY

Plaintiff applied for supplemental security income benefits ("SSI") and disability insurance benefits under the Social Security Act on April 7, 2008, alleging disability due to high blood pressure, numbness in wrists and hands, pinched nerves in neck, and

1

coughing from smoking, with an alleged onset date of January 3, 2007.[1] (Tr. 170-75; 220-27.) His claims were denied initially and upon reconsideration, and he requested a hearing. (Tr. 170-82.)

On November 21, 2008, the hearing requested by Plaintiff was convened before Administrative Law Judge ("ALJ") Robert C. Allen. ALJ Allen heard testimony from Plaintiff and Thomas J. Stewart, a vocational expert ("VE"). (Tr. 57-95.) On May 12, 2009, the ALJ

issued a decision finding that Plaintiff was not disabled.[2] (Tr. 149-15.) Plaintiff appealed, and on December 31, 2009, the Appeals Council remanded Plaintiff's claim for another hearing.[3] (Tr. 160-16).

---

[1]Plaintiff alleges he had a heart attack on January 3, 2007. (Tr. 110.) Through the current applications, Plaintiff is seeking benefits for the time period January 3, 2007 - May 11, 2009. Through subsequent applications dated May 27, 2009, the office of Disability Determination Services ("DDS") determined Plaintiff was disabled commencing on May 12, 2009. (Tr. 102.)

[2]In his decision, the ALJ noted that Plaintiff had previously filed applications for Social Security disability and SSI benefits on January 5, 2007, and an ALJ denied the claims on March 21, 2008. (Tr. 129-14; 152). Plaintiff's attorney requested that the former decision be reopened, but the ALJ found that there was no basis for reopening the prior applications. (Tr. 152.)

[3]In its remand order, the Appeals Council directed the ALJ to do the following:

- Enter into the record the brief dated May 21, 2009, submitted by the claimant's representative in connection with the request for review, and address the issues raised therein.
- Further evaluate the severity of the claimant's impairments for the entire period at issue. If the claimant is found to have disabling impairments which are amenable to treatment that could be expected to restore his ability to work, determine whether the claimant provides good reason for his failure to follow prescribed treatment. If necessary, obtain medical expert testimony to assist in this assessment . . . .
- Give further consideration to the claimant's medically determinable impairments and apply the standard set forth in *Stone v. Heckler*, 752 F.2d

Another hearing was held before ALJ Allen on May 5, 2010, and Plaintiff, who was represented by counsel, and VE Thomas Stewart testified. (Tr. 96-128.) On June 25, 2010, the ALJ rendered his decision that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 6-18.) The Appeals Council found no basis for changing the decision of the ALJ, and on November 4, 2010, denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.)

Aggrieved by the Commissioner's decision to deny benefits, Plaintiff filed a complaint in this court on December 30, 2010, seeking an order reversing the Commissioner's final decision and awarding him benefits, or remanding the case to the Commissioner for further administrative action as directed by the court. Complaint [1].

---

    1099 (5th Cir. 1985) in evaluating severity.
- Consider the impact of obesity, both singly and in combination with other impairments, upon the claimant's ability to function in accordance with Social Security Ruling 02-1p.
- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security ruling 96-8p).
- If necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments (20 CFR 404.1527(f) and 416.927(f) and Social Security ruling 96-6p).
- If warranted, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base . . . . The hypothetical questions should reflect the specific capacity limitations established by the record as a whole. The [ALJ] will ask the [VE] to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy . . . . Further before relying on the [VE] evidence the [ALJ] will identify and resolve any conflicts between the occupational evidence provided by the [VE] and information in the [DOT] and . . . the [SCO].

(Tr. 163-64.)

3

The Commissioner answered [11] the complaint denying that Plaintiff is entitled to any relief. The parties having filed dispositive motions pursuant to the Local Standing Order in Social Security Cases [3], the matter is now ripe for decision.

**MEDICAL/FACTUAL HISTORY**

Plaintiff was fifty-four years old at the time of the hearing before the ALJ on May 5, 2010. (Tr. 17.) His alleged onset disability date is January 3, 2007, when he allegedly had a heart attack and left his job as a dump truck driver. (Tr. 110.) Plaintiff is seeking benefits for the time period January 3, 2007 through May 11, 2009.[4] Plaintiff's past work experience is as a truck driver. (Tr. 110, 122, 264-70.) Plaintiff has a GED. (Tr. 102.) Plaintiff remained insured for Disability Insurance Benefits through December 31, 2011. (Tr. 10.)

On January 3, 2007, Plaintiff was admitted to Marion General Hospital for chest pains and tightness. He was discharged the next day with the following diagnoses: "1. Chest pain ruled out for myocardial infarction, no sign of infarction. Angina resolved. 2. History of coronary artery disease." Plaintiff was advised to implement a low cholesterol diet and to take his medications as prescribed. (Tr. 310-41.)

On January 6, 2007, Plaintiff was admitted to Wesley Medical Center for chest pains. He was discharged the same day with instructions to rest, continue his medications and to follow-up with his regular physician within two days. (Tr. 345-50.)

Plaintiff was treated by Dr. Michael O'Neal at the Purvis Family Medical Clinic during the relevant time period between January 8, 2007 and April 24, 2009, for various ailments. (Tr.

---

[4]*See supra*, footnote 1.

557-78; 627-58.) Plaintiff saw Dr. O'Neal on January 8, 2007, for follow-up for chest pains. His assessment was angina, elevated cholesterol, and borderline hypertension. Plaintiff saw Dr. O'Neal on January 30, 2007, for follow-up. He complained of shortness of breath, coughing and a recent syncope-like spell. His assessment was "Chest pain, nonspecific. Arteriosclerotic cardiovascular disease, peripheral vascular disease, sarcoidosis, hypertension, and some bright subclavian artery stenosis." An x-ray of Plaintiff's chest revealed no focal infiltrate, no pleural effusion; the cardiac and mediastinal silhouettes were unremarkable and the bony thorax was intact. (Tr. 575-78; 714.)

Plaintiff was admitted to Forrest General Hospital on March 8, 2007, for ankle pain after a syncopal episode post coughing. Dr. Papizan noted the following impression: "1. Syncopal episode status post coughing probably secondary to brachiocephalic arterial occlusion but also with some left-sided weakness - will need to rule out TIA versus stroke also based on abnormal CT head. 2. Hyperlipidemia. 3. Sarcoidosis and chronic bronchitis. 4. Severe peripheral vascular disease status post fem-fem bypass in the past and is followed by Dr. Hatten. He is also noted to have a brachiocephalic arterial occlusion unable to be corrected with percutaneous interventions. He also has a history of cough syncope secondary to this. 5. Osteoarthritis/DJD. 6. Possible coronary artery disease and recently had abnormal cardiolite but I believe he has had one also in the past but has not had further workup with a heart cath or cardiac CTA at this time possibly due to financial reasons." Plaintiff underwent a series of tests and monitoring. An x-ray indicated a sprained ankle. A transesophageal echocardiogram revealed mild mitral insufficiency. The study was

5

otherwise normal with no thrombus or shunt present. (Tr. 521-37.)

On April 2, 2007, Plaintiff was admitted to Forrest General Hospital for chest pains. Dr. Eric Enger performed a heart catheterization with a successful angioplasty and stenting of the proximal mid LAD. He was discharged on April 5, 2007, with the following discharge diagnoses: "1. Coronary artery disease status post PTCA and stent placement to the mid LAD. 2. Chest pain secondary to number 1. 3. Hyperlipidemia. 4. History of coronary artery disease in the past with stenting. 5. Peripheral vascular disease status post Fem-fem bypass. 6. Depression. 7. Chronic pain syndrome." (Tr. 429-42.) Plaintiff saw Dr. Enger for follow-up visits on April 27, 2007, and June 15, 2007. (Tr. 467-69.)

Plaintiff saw Dr. O'Neal on April 9, 2007, for follow-up post hospitalization with angioplasty. Dr. O'Neal noted that Plaintiff was doing well without any chest pain. His assessment was "1. Status post angioplasty. 2. Hypertension. 3. Elevated cholesterol. 4. ASCVD." Plaintiff saw Dr. O'Neal on July 25, 2007, for follow-up post a syncope-like episode. (Tr. 570-74;653.)

On May 21, 2007, Plaintiff was admitted to Forrest General Hospital for chest pains and high blood pressure. After undergoing tests and monitoring, Plaintiff was discharged by Dr. Enger on May 24, 2007, with the following discharge diagnoses: "1. Chest pain, most likely musculoskeletal. 2. History of angioplastic stenting of the proximal mid LAD. 3. Peripheral vascular disease. 4. History of sarcoidosis. 5. History of hyperlipidemia." He was advised to return for follow-up in three months. (Tr. 443-63.)

Plaintiff saw Dr. Lawrence Leader at Hattiesburg Clinic on July 20, 2007, for

heart palpitations, presyncope and chest tightness. His impression was "1. Episodes of dysrhythmia with syncope, possibly related to paroxysmal atrial fibrillation with rapid ventricular response versus sustained or nonsustained ventricular tachycardia. 2. History of coronary artery disease with stent placement to the LAD in the past and on aspirin therapy. 3. Peripheral vascular disease for which the patient has undergone fem-fem bypass surgery. 4. History of tobacco abuse and COPD. 5. Hypertension - generally well controlled but elevated slightly today. 6. Dyslipidemia for which the patient is on Vyutorin. 7. History of neuropathy - followed by a neurologist on Lyrica therapy." Dr. Leader discussed with Plaintiff the possibility of an implanted loop recorder. (Tr. 656-58.)

Plaintiff saw Dr. Lewis Hatten at Hattiesburg Clinic on several occasions between July 30, 2007 and November 17, 2008, for treatment and monitoring of his peripheral arterial disease. Dr. Hatten recommended that Plaintiff quit smoking and continue to control his other risk factors, like cholesterol, antiplatelet therapy and hypertension. (Tr. 637-52.)

Plaintiff saw Dr. Nabih Alsheikh at the NeuroScience Center on August 2, 2007, for a follow-up visit for his subclavian artery stenosis, cervical spondylosis and idiopathic peripheral neuropathy. Dr. Alsheikh noted that Plaintiff had no new complaints and reported that he used to have syncopal episodes but had no more "events." His motor exam, gait, and reflexes were normal. He was instructed to take his prescribed medications, except Lyrica which Plaintiff stated he could not afford, and return in six months. (Tr. 474-75.)

Plaintiff saw Dr. Leader at Hattiesburg Clinic on October 16, 2007, for a follow-up

visit. He noted Plaintiff had done "fairly well" since his last visit. His impression was "1. History of coronary artery disease with stent placement to the LAD in the past and on chronic antiplatelet (aspirin) therapy. 2. Peripheral vascular disease for which the patient has undergone fem-fem bypass surgery and has minimal lower extremity claudication symptoms. 3. History of tobacco abuse and COPD. 4. Hypertension - controlled. 5. History of dyslipidemia - on Vyutorin therapy. 6. History of neuropathy." Dr. Leader advised Plaintiff to continue his current medications and follow-up in nine months. (Tr. 476-81; 649-50.)

Plaintiff was admitted to Forrest General Hospital on October 20, 2007, for chest pain. Plaintiff underwent a heart catheterization. He was discharged on October 23, 2007, with the following discharge diagnoses: "1. Unstable angina with negative cath suggestive of small vessel disease. 2. History of coronary artery disease status post stenting of LAD in April '07. 3. Peripheral vascular disease status post Fem-fem bypass. 4. Tobacco abuse. 5. Leukocytosis, resolved. 6. Hypertension possibly secondary to over medication with Lopressor and Lasix. 7. Hyperlipidemia. 8. Depression. 9. Chronic pain syndrome." (Tr. 482-500; 510-17; 566-67.)

Plaintiff saw Dr. O'Neal on October 26, 2007, for follow-up post hospitalization. Dr. O'Neal noted Plaintiff had done well since hospitalization. Plaintiff saw Dr. O'Neal on November 26, 2007, for follow-up; Dr. O'Neal noted that Plaintiff was doing well, and needed to test his tolerance of his ability to walk without pain, cramping or shortness of breath due to his severe peripheral vascular disease. (Tr. 562-65; 646.)

Plaintiff saw Dr. O'Neal on January 25, 2008 for elevated cholesterol with peripheral vascular disease and neuropathy. On January 28, 2008, Plaintiff was

8

evaluated by Dr. Michael O'Neal for disability.  Dr. O'Neal noted that Plaintiff continues to have difficulty with sustained activity due to his peripheral vascular disease, COPD, etc., with no recent improvement.  His assessment was "1. Peripheral vascular disease and 2. COPD, 3. hypertension, 4. arteriosclerotic disease, 5. low back pain, 6. history of sarcoidosis, 7. cervical radiculopathy, 8. status post CVA, 9. brachiocephalic arterial occlusion, 10. hypercholesterolemia."  (Tr. 559-61; 644-45.)

Plaintiff saw Dr. O'Neal in March 2008 complaining of left leg weakness, which Dr. O'Neal assessed as possibly secondary to his peripheral vascular disease.  (Tr. 557; 643.)

On June 26, 2008, Dr. Karen Hulett, a physician consulted by DDS, completed a Physical Residual Functional Capacity assessment.  Dr. Hulett opined that Plaintiff could sit and stand or walk for up to 6 hours in an 8-hour workday, and could lift/carry 10 pounds frequently and 20 pounds occasionally.  Dr. Hulett opined that Plaintiff had no postural, manipulative, visual or communicative limitations, but did have an environmental limitation that he should avoid even moderate exposure to fumes, gases, dust, odors and poor ventilation.  An extremity physiological evaluation using a Doppler revealed that Plaintiff's ankle brachial indices were normal.  (Tr. 589-605.)

On August 5, 2008, Plaintiff went to the emergency room at Forrest General Hospital complaining of vision problems and headaches.  A CT revealed no acute intracranial abnormality and two areas of old chronic infarction in the right frontal lobe.  Plaintiff was advised to follow-up with Dr. O'Neal and to see an ophthalmologist.  (Tr. 606-13.)

Plaintiff saw Dr. O'Neal on December 17, 2008, for dizziness, hot/cold flashes and right-sided weakness. A CT scan a few weeks later revealed infarctions of chronic character in the distribution of the ACA. (Tr. 632-35.)

Dr. Ahmad A. Haidar examined Plaintiff on February 9, 2009, and completed a consultative examination report for DDS. Plaintiff complained of burning feet, which he claims has been a problem for a few years. Dr. Haidar's assessment was 1. history of peripheral neuropathy of unknown etiology, 2. coronary artery disease, 3. hyperlipidemia, and 4. peripheral vascular disease. Dr. Haidar completed a Medical Source Statement, and opined that Plaintiff had no limitations in sitting or standing/walking; occasional limitations in the postural activities of climbing, balancing, stooping, crouching, kneeling and crawling; and no limitations in reaching, handling, fingering, pushing-pulling, seeing, hearing or speaking. Dr. Haidar concluded that Plaintiff could lift/carry 10 pounds frequently and 20 pounds occasionally. Dr. Haidar opined that the following environmental restrictions were caused by Plaintiff's impairments: temperature extremes, humidity and fumes. (Tr. 614-20.)

## STANDARD OF REVIEW

In this case the Court conducts a limited inquiry and review of the Commissioner's decision and whether or not there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen* 837 F. 2d 1378, 1382 (5th Cir. 1988). Substantial evidence is, "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F. 2d 162, 164 (5th Cir. 1983). To be substantial,

the evidence "must do more than create a suspicion of the existence of the fact to be established." *Hames,* 707 F. 2d at 164 (citations omitted). However, "a finding of no substantial evidence is appropriate only if no credible evidentiary choices are medical findings support the decision. *Boyd v. Apfel*, 239 F. 3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the Courts, to resolve. *Selders v Sullivan*, 914 F. 2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. "Even if the evidence preponderates against" the Commissioner's decision. *Harold*, 862 F. 2d at 475. If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders*, 914 F. 2d at 617. Moreover, "procedural perfection in administrative proceedings is not required as long as 'the substantial rights of the parties have not been affected.'" *Audler v Astrue*, 501 F. 3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F. 2d 1362, 1364 (5th Cir. 1998).

## PLAINTIFF'S OBJECTIONS AND ANALYSIS

In his Objections [30] the Plaintiff complains that the Magistrate Judge misconstrued the application of the standard set forth in *Stone v Heckler*, 752 F. 2d 1099 (5th Cir. 1985). In this case the Plaintiff has been determined to be disabled beginning May 12, 2009, and at issue before this Court is only the period of disability beginning on Plaintiff's alleged date of offset, which is January 3, 2007, and continuing through May 11, 2009, the day before he was determined to be disabled.

In his Objection, Plaintiff states that the Administrative Law Judge failed to refer to the *Stone* opinion or to give an express statement that the Fifth Circuit's regulatory construction has been used at this step of the sequential analysis. The Report and

11

Recommendation states clearly that the Administrative Law Judge cited to the standards set out in *Stone*. The Report and Recommendation finds and the record confirms, that the standard in *Stone* was applied in this case. As long as the correct standard is applied by the Administrative Law Judge, remand is not required.

Also, Plaintiff complains that the Administrative Law Judge erred in failing to find that Plaintiff's Chronic Obstructive Pulmonary Disease and Brachiocephalic arterial occlusion were severe impairments. These determinations are not for this Court to make. If there is substantial evidence to support the decision of the Commissioner, this Court is required to affirm the factual findings. The Objection is without merit.

Plaintiff's second objection is that in the first decision by the Administrative Law Judge on March 21, 2008, he found that the Plaintiff's residual functional capacity should allow him to sit/stand with sitting after twenty minutes of standing and a restriction to limited walking with the limitation that Plaintiff should not climb ladders, ramps, ropes, stairs, or scaffolds. Continuing, the Plaintiff claims that the second decision of the Administrative Law Judge, rendered on June 25, 2010, eliminates the sit/stand option and the restriction to limited walking, while the postural functions of bending, stooping, squatting, and climbing are allowed on an occasional basis. The complaint is that the Administrative Law Judge gives no rationale and no reference to the medical record, for these changes in his assessment of Plaintiff's residual functional capacity, while both decisions address the same medical evidence. The Defendant responds that this issue was brought up for the first time in his Objection and is barred and the Defendant also points out that the Administrative Law Judge's May 2009 decision was vacated by the Appeals Council when they determined that the case had

to be remanded. Consequently, it is not considered.

The Plaintiff continues that the medical records do not support the residual functional capacity determination, but after a review of the evidence, this Court finds that there is substantial evidence in the record to support the findings of the Administrative Law Judge and the recommendation by the Magistrate Judge.

As stated above, factual determinations are for the Commissioner and not for this Court when there is substantial evidence supporting the determination and the proper legal standard has been applied. Consequently, this Objection is without merit.

Thirdly, Plaintiff objects and alleges that the Administrative Law Judge erred in the weight that he gave the report of Plaintiff's treating physician, Dr. Michael R. O'Neal. Both sides are well familiar with the standard applied regarding treating physicians testimony and opinions. The record clearly contains substantial evidence to support the decision by the Administrative Law Judge. The Judge determined that Dr. O'Neal's opinion was only entitled to some weight since some of his opinions were not supported by the totality of the evidence. Here again, factual determinations are for the Commissioner and not for this Court to make and, therefore, this Objection is without merit.

## IV. CONCLUSION

As required by 28 U.S.C. § 636(b)(1) this Court has conducted an independent review of the entire record and a *de novo* review of the matters raised by the objections. For the reasons set forth above, this Court concludes that Owen's Objections lack merit and should be overruled. The Court further concludes that the Report and Recommendation is an accurate statement of the facts and the correct analysis of the

law in all regards. Therefore, the Court accepts, approves and adopts the Magistrate Judge's factual findings and legal conclusions contained in the Report and Recommendation. Accordingly, it is ordered that the United States Magistrate Judge Michael T. Parker's Report and Recommendation is accepted pursuant to 28 U.S.C. § 636(b)(1) and that Justin Gene Owen's Complaint is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2). All other pending motions are denied as moot.

SO ORDERED this, the 29th day of March, 2012.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE